**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

GLAMIRY I. GONZALEZ

        Plaintiff,

vs.                                                        CASE NO: 2:10-cv-14-FTM-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

**ORDER**[1]

This matter comes before the Court on the Complaint of Plaintiff, Glamiry I. Gonzalez, Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on October 21, 2009. The case originated in the Southern District of Florida. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #27) on September 29, 2010. The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #29) on November 23, 2010. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Order addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

# FACTS

## *Procedural History*

The Plaintiff previously filed an application for disability, disability insurance benefits, and supplemental security income on April 20, 2007, alleging an onset disability date of April 9, 2007. (Tr. 112-13, 115-17). The claims were denied initially and upon reconsideration. (Tr. 89-92, 98-99, 103-04). The Plaintiff timely filed a request for hearing. On March 24, 2009, a hearing was held by video before the Honorable D. Kevin Dugan, Administrative Law Judge (ALJ), in West Palm Beach, Florida. The ALJ issued an unfavorable decision on April 24, 2009. (Tr. 12-22). The Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on June 1, 2009. (Tr. 4-8). The Appeals Council denied Plaintiff's Request for Review on August 28, 2009. (Tr. 1-3). The Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g). James Elkins, an attorney, represents the Plaintiff.

## *Plaintiff's History*

The Plaintiff was twenty-two years old, born on January 28, 1987, when the hearing decision was issued. The Plaintiff has a high school education and some college. The Plaintiff has a past relevant work history as a day care worker and customer service representative. (Tr. 138). The Plaintiff was involved in a vehicle crash and a prolonged extraction from the vehicle. (Tr. 141). The Plaintiff alleges disability as a result the injuries sustained in the vehicle crash.

## *Medical History*

On April 9, 2007, Ms. Gonzalez was involved in a head on collision and a prolonged extraction from a vehicle. She was taken to the trauma center of Lee Memorial Hospital with multiple extremity fractures. (Tr. 195, 198, 200). She was diagnosed with bilateral humeral shaft

fractures (Tr. 196), for which she underwent bilateral closed reduction and splinting on April 10, 2007, followed by bilateral open internal fixation on April 13, 2007. (Tr. 229). She also had a degloving injury to her left forearm, lateral compression pelvic fracture, open patellar fracture with evidence of intraarticular knee injury, and severe distal tibia articular fracture of the right lower extremity with fibular fracture. (Tr. 196). She underwent an intraarticular right tibia/fibula with placement of external fixator on April 10, 2007, followed by removal of the fixator with open reduction and internal fixation on April 19, 2007. (Tr. 229). She also underwent an open right patella and femoral condyle fracture with incision and drainage on April 10, 2007. Her fracture of the right distal radius and ulna were splinted. (Tr. 229).

When she was first admitted to the hospital she was able to move her extremities and follow commands. However, the doctor noted that on April 11, 2007, she became increasingly lethargic and it was difficult to arouse her. (Tr. 195). A CT scan of her head revealed a right middle cerebral artery stroke had occurred. A CTA revealed a right internal carotid dissection. (Tr. 195). She had a decompressive craniectomy on an emergency basis. (Tr. 203). Postoperatively, she developed right ICA dissection-thrombus. She also had bilateral renal contusions and a fracture of the left L1-4 transverse process. (Tr. 229).

In a letter dated May 31, 2007, Dr. Jeffrey S. Henn stated that it was his impression that Ms. Gonzalez had made a remarkable recovery. He did state that, even though she had regained significant use of her left arm, she continued to lack fine motor dexterity in her hand. (Tr. 269).

On June 28, 2007, Ms. Gonzalez had a follow-up appointment with Dr. Henn. The doctor opined that she had made a remarkable recovery and was essentially neurologically intact. The

3

swelling in her brain appeared to be resolved, upon review of a CAT scan performed on June 27, 2007. The doctor discussed replacing her bone flap on her skull. (Tr. 280).

On May 16, 2007, Ms. Gonzalez presented to Orthopedic Specialists of SW Florida, specifically to Dr. Jeremy A. Schwartz. The doctor found that she remained non-weightbearing of the right lower extremity. The doctor discontinued her sutures and her wounds were Steri-Stripped. The doctor was going to put her in a cast and she would remain non-weightbearing. (Tr. 287). She also saw Dr. Antonio J. Flores, who is with the same practice, to evaluate her humeri. The doctor examined her humeri and found them to be in excellent alignment with good fixation of both humeri in anatomic reduction. The doctor noted that the hardware was in place. (Tr. 286).

On June 28, 2007, Ms. Gonzalez had a follow-up appointment with Dr. Flores. She reported restoration of her function in her left arm except for being able to spread her fingers. The doctor noted that she had full range of motion of her elbows on extension and flexion as well as with wrist pronation and supination. Upon neurovascular examination, she was intact except for the ulnar nerve of the left upper extremity, which revealed no motor function at the time. (Tr. 284).

On July 11, 2007, the doctor found that she had a moderate amount of swelling of her right ankle. The range of motion in her knee was from 0-100 degrees. The doctor wanted her to continue to utilize the boot and begin progressive weightbearing with formal physical therapy. (Tr. 283).

On July 30, 2007, Ms. Gonzalez presented to Lee Memorial Hospital to have a replacement of her right frontal bone flap. (Tr. 329). Dr. Henn found that she was neurologically intact, but continued to have difficulty with her left hand motor skills. (Tr. 329).

On August 8, 2007, Ms. Gonzalez had a follow-up with Dr. Schwartz. She reported that she was able to go full weightbearing in the boot. She said her knee was improving. X-rays of her right ankle revealed that her fracture was completely healed. The doctor was going to begin to transition her out of the boot, and she would continue her physical therapy. (Tr. 282).

Ms. Gonzalez presented to Dr. Flores on August 30, 2007. Upon examination, the doctor found that both her arms had full range of motion at the elbows and shoulders. The doctor noted that she had difficulty firing her first dorsal interosseous. (Tr. 281, 386). The doctor further noted that x-rays of her humeri revealed that they were both healed and in anatomic alignment. (Tr. 281, 386).

Ms. Gonzalez underwent physical therapy for her right ankle from August 21, 2007 until September 13, 2007. She had eight sessions and did have some improvement in the range of motion in that ankle. Upon discharge, her general strength was found to be 4 to 4/5 in the right ankle. She was able to heel walk, but not walk on her toes. (Tr. 468).

On September 20, 2007, Ms. Gonzalez presented to Dr. Garry M. Weinberger, Psy.D., for a General Clinical Evaluation with Mental Status and an Abbreviated Neuropsychological Screener, at the request of the Commissioner. (Tr. 469). Ms. Gonzalez reported that her left hand was numb and that she had very limited use of it. She reported being too afraid to drive and seeing and thinking about her accident often. She also reported depression since her accident due to the scars and the thought that she may never be able to live like she used to. The doctor noted that she ambulated with a slight stiffness. (Tr. 469). She was given the Rey 15 items task and Wechsler Memory Scale tests. She scored a 12 out of 15 on the Rey 15 Items Task, which indicated that she placed full effort into completing the evaluation. (Tr. 469). The doctor found that her general

memory and working memory were in the average range. The test indicated that her auditory immediate and immediate memory was in the low average range. The doctor found that she could not interpret common proverbs, her fund of knowledge was poor, her abstract reasoning was borderline, as well as her social cognition. The doctor diagnosed her with adjustment disorder with depressed mood, posttraumatic stress disorder, and a GAF of 66. (Tr. 470).

On October 19, 2007, Dr. Ingrid Wilson, a non-examining physician for the state agency prepared a Physical Residual Functional Capacity Assessment regarding Ms. Gonzalez. (Tr. 486-493). The doctor opined that Ms. Gonzalez could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry 10 pounds. She could stand and/or walk two hours in an eight hour day. She could sit about six hours in an eight hour day. She would be limited in her ability to push and/or pull using her upper extremities. (Tr. 487). She could never climb ladders, ropes or scaffolds and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. (Tr. 488). She would also be limited in her ability to handle (gross manipulation), finger (fine manipulation), and feel (skin receptors) in her left upper extremity. (Tr. 489). The doctor found that she should avoid concentrated exposure to hazards, such as machinery and heights. (Tr. 490).

On March 10, 2008, Ms. Gonzalez presented to Dr. Eileen L. Schwartz, for an "independent evaluation" at the request of the Commissioner. Ms. Gonzalez had complaints of headache, pain, or extremity pain in cold weather and had no progressive headache syndrome. She got occasional low back or thoracic pain, which was non-radicular and would occur when she sat for a long duration. The doctor stated that her main concerns were her right distal leg and ankle pain and swelling when she walked. She had gone back to wearing an ankle boot, and she also had

to ice her ankle due to swelling. The doctor noted that she had little to no left hand function. Her hand was numb, and all of her fingers had no deromatomal distribution, and weakness. She had numbness of the left side of her lips and tended to drool out of the left corner of her mouth when she ate. She told the doctor that her left palpebral fissure is larger than the right. (Tr. 518). Ms. Gonzalez reported that her weakness interfered with cooking, holding a pot, tying her shoes or putting her hair in a ponytail. She required assistance from her sister in order to do all of these things, as well as to assist her in getting dressed. She needed assistance in dressing her child. She did not drive, due to fear. She also reported being depressed. (Tr. 518). Ms. Gonzalez reported urinary frequency, cold extremities, and memory loss or confusion. Upon examination the doctor found that the left palpebral fissure was slightly larger than the right, suggesting a soft left central facial paresis. The doctor found that her grip and finger function on the left was 2/5 with markedly impaired fine motor dexterity. She was unable to tie her shoes during the evaluation and could only put her socks on with her right hand. Tone was slightly increased in the left leg in comparison to the right. The doctor noted that she favored the right leg when walking. She was cautious about standing on her right heel and toe. (Tr. 519).   Without electrical studies, the doctor was unclear as to whether or not her left arm had nerve damage. (Tr. 520). The doctor also opined that she may have had right peroneal palsy. (Tr. 520).

      On April 14, 2008, Ms. Gonzalez presented to the Henry-Glades Behavioral Health Center, where a Brief Behavioral Status Exam was conducted. (Tr . 544). She reported being depressed and having sharp pain. She did not drive, due to being traumatized. She also reported forgetting things. The examiner noted that she had poor insight and impaired short term memory. She was diagnosed with an adjustment disorder with depressed moods and assigned a Global Assessment

of Functioning of 55. (Tr. 544). She had a psychiatric evaluation on May 8, 2008. Ms. Gonzalez told the doctor that after her accident she felt depressed and anxious. She never sought treatment because she thought she would get over it. She then realized that her condition was not improving. She felt depressed and cried easily. She had nightmares and had not driven since the accident due to anxiety. (Tr. 539). The doctor found her mood to be dysthemic, depressed. Her concentration was fair. She had decreased libido and energy levels. She reported having anxiety at night and while driving or as a passenger in a car. (Tr. 542). The doctor diagnosed her with post-traumatic stress disorder, chronic, depressive disorder and complaints of dysthymic disorder. He assigned her a GAF of 57. She was prescribed Celexa for depression and Klonipin for anxiety. The doctor recommended that she get psychotherapy, but she reported that she did not have insurance and could not afford it. (Tr. 543). Ms. Gonzalez subsequently reported doing much better on the medications. (Tr. 533-537).

*Administrative Law Judge's Decision*

Upon consideration of the evidence, the ALJ noted the Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2008. (Tr. 14, Finding 1). The Plaintiff was found to have not engaged in substantial gainful activity since April 9, 2007, the alleged onset disability date. (Tr. 14, Finding 2). The ALJ found the Plaintiff suffers from the following severe impairments: status post upper and lower limb fractures and status post right middle cerebral artery stroke and decompressive craniectomy (20 CFR 404.1520(c) and 416.920(c)) (Tr. 14, Finding 3). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, 416.926). (Tr. 16).

After careful consideration of the entire record, the ALJ found the Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416. 967(b) except that she can do no driving and no ladder climbing. (Tr. 16, Finding 5). The ALJ found the Plaintiff is capable of performing past relevant work as a day care teacher and customer service representative. This work does not require the performance of work related activities precluded by the Plaintiff's residual functional capacity. (Tr. 21, Finding 6). The ALJ concluded the Plaintiff has not been under a disability, as defined in the Social Security Act, from April 9, 2007, through the date of the decision. (20 CFR 404.1520(f) and 416.920(f). (Tr. 21, Finding 7). The Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a).

---

[1]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
    *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g)(sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the

---

claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511. To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states the case should be remanded to the Commissioner due to the following errors: (1) the ALJ improperly rejected Plaintiff's depression and anxiety as severe impairments, and (2) the ALJ improperly discounted Plaintiff's testimony regarding her subjective pain complaints. The Government argues the ALJ's decision was based upon substantial evidence and should be affirmed.

*(1) Whether the ALJ Erred in Failing to Find the Plaintiff's Anxiety and Depression "Severe"?*

The Plaintiff argues the ALJ failed to find that Plaintiff's anxiety and depression were severe mental impairments. The Commissioner argues that since the ALJ found in favor of the Plaintiff at step two of the sequential evaluation process due to other severe impairments, the

specific impairments listed in his step two are irrelevant. Further, contrary to Plaintiff's contentions, the Commissioner argues that substantial evidence supports the ALJ's finding that she did not have a severe mental impairment.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include, for example, (1) physical functions such as walking and standing; (2) capacities for seeing, hearing, and speaking; (3) understanding, following, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers, and normal work situations; and (6) dealing with changes in the work setting. 20 C.F.R. § 404.1521(b). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education, or work experience." Bridges v. Bowen, 815 F.2d 622,625 (11th Cir. 1987).

At step two of the sequential evaluation process, the ALJ found that the Plaintiff had the following severe impairment: status post upper and lower limb fractures and status post right middle cerebral artery stroke and decompressive craniectomy. (Tr. 14). The ALJ stated that the Plaintiff's medically determinable[2] mental impairments of post-traumatic stress disorder and depressive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore

---

2 Diagnosis of a condition does not proved that the condition affected the claimant's ability to perform basic work activities. Moore v. Barnhart, 405 F.3d 1208, 1213 n.3 (11th Cir. 2005); see alsoGross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss.").

12

non-severe. (Tr. 15). In coming to this conclusion, the ALJ considered the effect of the above mental impairments on four broad functional areas, also known as "paragraph B" criteria, set out in the regulations for evaluating mental disorders. 20 C.F.R. Pt. 404, Subpart P, App. 1.

Evaluating the mental impairments in each of four functional areas will reveal the extent to which the impairments interfere with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c)(2). The four broad functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the first three categories, the ALJ will use a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the fourth category, the ALJ will use a four-point scale: none, one or two, three, and four or more. 20 C.F.R. § 404.1520a(c)(4). If the limitation in the first three function areas rates at "none" or "mild," and the fourth area rates at a "none," then the ALJ will generally conclude that the claimants impairments are not severe, unless "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

The ALJ found the Plaintiff suffered from mild limitation to "activities of daily living," no limitation to "social functioning," no limitation to "concentration, persistence or pace," and no episodes of decompensation of extended duration. (Tr. 15-16).

The ALJ determined the Plaintiff's mental impairments cause a mild limitation to activities of daily living. For this conclusion, the ALJ specifically relied upon the Plaintiff's own Function Report. (Tr. 120–27). The ALJ noted that the Plaintiff does light housework and cares for her

13

young daughter. She does not take medication in spite of complaints of physical pain. She does not drive. The ALJ concluded that there was little objective evidence of substantial difficulties in this area, and that substantial evidence supports that the Plaintiff's mental impairments cause mild limitations to activities of daily living. (Tr. 15-16).

The ALJ determined the Plaintiff's mental impairments cause no limitations to her social functioning ability. The ALJ, again, specifically relied on the Plaintiff's own Function Report for limitations to her social functioning. The Plaintiff lives with her boyfriend and daughter and attends church. She is able to interact appropriately with family and friends, physicians, and other health care providers. Substantial evidence supports that the Plaintiff's mental impairments cause no limitations to her social functioning.

In the third functional area, the ALJ determined the Plaintiff's mental impairments cause mild limitations to her ability to maintain concentration, persistence, or pace. To support his finding, the ALJ relied on many, if not all, of the medical opinions in the record. Although the Plaintiff complained of problems with memory and mental tasks, the ALJ relied upon the objective data in Dr. Garry M. Weinberger's Psychological Evaluation. (Tr. 14-15). Dr. Weinberger concluded in September 2007 that the Plaintiff can meet most activities of daily living and appeared coherent, friendly, and helpful. (Tr. 14-15). Though her fund of knowledge was poor, her memory was in the "average" range, including her working memory, as was her attention and concentration. She could complete reverse mental tracking tasks. Her GAF was assessed at 66, indicating mild symptoms. (Tr. 15). In addition, the ALJ relied on Dr. Bernadotte, who concluded in October 2008 that the Plaintiff's concentration was fair and her thoughts were organized and goal directed. Further, Plaintiff was doing well on medication with no side effects

14

(Tr. 15). In light of the above findings by Drs. Weinberger and Bernadotte, as relied on by the ALJ, there is substantial evidence to support the ALJ's finding that the Plaintiff's mental impairments cause mild limitations to her ability to maintain concentration, persistence, or pace.

In the final functional area, the ALJ found the Plaintiff did not experience episodes of decompensation. The medical evidence supports the ALJ's findings of zero episodes of decompensation. (Tr. 16).

With the findings above, the ALJ will generally find impairments were not severe, unless "the evidence otherwise indicates that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." 20 C.F.R. § 404.1520a.

To make his findings, the ALJ considered the Plaintiff's medically determinable mental impairments of post-traumatic stress disorder and depressive disorder. The ALJ found that the impairments "do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 15). Further, there is no evidence that otherwise indicates that there is more than a minimal limitation in the Plaintiff's ability to do basic work activities. This Court finds there is substantial evidence in the record to support the ALJ's finding at Step 2.

### (2) Whether the ALJ Properly Applied the Eleventh Circuit Pain Standard and Properly Articulated His Reasons for His Credibility Finding?

The claimant bears the burden of proving she was disabled within the meaning of the Social Security Act. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). When a claimant attempts to establish disability based on her subjective complaints, the claimant must satisfy the Holt Pain Standard. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); 20 C.F.R. § 404.1529. In this three-part test, the claimant must show: "(1) evidence of an underlying medical

condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain [or other symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain [or other symptoms]." Holt, 921 F.2d at 1223.

Once the claimant establishes an underlying physical or mental impairment could be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); S.S.R. 96-7p. When evaluating intensity, persistence, and limiting effects of the symptoms:

> Statements about [claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [the claimant is] disabled.

20 C.F.R. § 404.1529(a). The ALJ is to consider "all available evidence, including objective medical evidence, such as medical signs and laboratory findings, statements of the claimant and others about the claimant's symptoms, the medical opinions of treating physicians and non treating physicians, and evidence of how the pain affects the claimant's daily activities and ability to work." May v. Comm'r of Soc. Sec. Admin., 226 Fed.Appx.955, 958–59 (11th Cir. 2007); 20 C.F.R. § 404.1529(a).

When Plaintiff filed her application, she indicated that she was limited in her ability to work due to brain damage, multiple bodily injuries, and being wheelchair-bound after a car accident. (Tr. 17). The ALJ found, after considering the evidence in the record, that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 20). However, the ALJ found the Plaintiff's statements concerning the

16

intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. (Tr. 20).

The Plaintiff claims that the ALJ improperly applied the Holt Pain Standard, thus improperly discounting Plaintiff's testimony regarding her subjective complaints. (Pl's Br. 13). The Commissioner claims that the ALJ properly applied the Eleventh Circuit Pain Standard (the Holt Standard) and that substantial evidence supports his reasons for discrediting Plaintiff's subjective complaints. (Comm'r's Br. 12).

The Plaintiff claims the ALJ failed to articulate adequate reasons for discrediting pain testimony. Specifically, the Plaintiff asserts that the ALJ discredited her testimony only because it was inconsistent with objective medical evidence. Plaintiff asserts this requires that, as a matter of law, all statements by Plaintiff must be accepted as true. Contrary to the Plaintiff's claim, the ALJ fully and adequately gave reasons for discrediting pain testimony. Additionally, the ALJ did not discredit the Plaintiff's testimony solely because it was inconsistent with objective medical evidence, but considered Plaintiffs statements, history, medical statements, and consulting physicians. The ALJ articulated that intensity, persistence and limiting effects of the symptoms were inconsistent with the residual functional capacity assessment for numerous reasons.

The incident that created all of the claimed impairments and their symptoms came from the Plaintiff being involved in a head-on car collision in 2007. The Plaintiff suffered multiple extremity fractures, including right distal tib-fib fracture, right open patellar tendon laceration, and bilateral humerus fractures. She also suffered a right middle cerebral artery stroke and right internal carotid dissection. She underwent right frontotemporietal decompressive craniectomy on April 11, 2007. (Tr. 17).

The Plaintiff asserted physical limitations to performing past relevant work, including an inability to stand on her ankle for long periods of time and a loss of feeling in her left hand. (Tr. 29-30). The ALJ found, however, that the Plaintiff's continued reports of pain and limitations were out of proportion to the objective findings. (Tr. 20). He cited Dr. Henn's statement that she was making a remarkable recovery by May 31, 2007, and that she had regained significant use of the left arm and seemed to have normal strength in her left lower extremity. (Tr. 20). The ALJ specifically noted Dr. Henn's finding that by the end of June 2007, Plaintiff was neurologically intact. (Tr. 20). The ALJ relied on Dr. Flores' report that Plaintiff's left arm function was restored, except for being able to spread her fingers; that Plaintiff reported no pain in either arm; and that she could use her arms for transfers. (Tr. 20). The ALJ also considered that in August 2007, Dr. Swartz reported that the Plaintiff was doing well and her right knee and ankle had improved, and that on August 30, 2007, Dr. Flores described her left arm as "minimally symptomatic" and said that Plaintiff was able to do just about everything and could make a full fist on the left arm without difficulty. (Tr. 20). Additionally, the ALJ cited Dr. Schwartz's March 2008 report that the Plaintiff's grip and all finger function on the left was 2/5 with markedly impaired fine motor dexterity and that there may be a sustained right peroneal palsy, with minimal deficit. (Tr. 20). The ALJ, bound by objective medical evidence, found that Plaintiff's impairments are not severe enough or so disabling to render her unable to perform work activities. (Tr. 20).

The ALJ also considered other factors on the record when evaluating the Plaintiff's credibility. The ALJ noted, "Despite her allegations of total and complete disability since April 9, 2007, the record indicates that the [Plaintiff] is more active than she has alleged." (Tr. 20). He

18

cited Dr. Weinberger's September 2007 report that she could do most activities of daily living but was afraid to drive. (Tr. 20). Further, he cited a written report, dated January 28, 2008, by the Plaintiff herself, in which she reported that during the day she took care of her personal needs and she watched television most of the day until her daughter came home from school. She prepared simple meals such as sandwiches, cereal, and eggs, and did a little laundry. She said that she did not drive because of her ankle. She shopped for food and personal items, paid bills, and attended church on Sundays. (Tr. 20). The ALJ noted, also, that Plaintiff reported in May 2008 that she spent time with her daughter going to the beach and shopping. (Tr. 20). The ALJ found that these activities do not indicate the disabling symptoms and limitations the Plaintiff alleges. (Tr. 20).

It was proper for the ALJ to consider Plaintiff's daily activities in assessing the credibility of her allegation of disabling limitations, since the Plaintiff's activities may show that the symptoms are not as limiting as alleged. See 20 C.F.R. § 404.1529(c)(3)(i). The ALJ did not solely rely on Plaintiff's daily activities in deciding her claim, nor did the ALJ find Plaintiff's activities to be dispositive evidence of her ability to work. The ALJ merely considered the Plaintiff's daily activities as one of many factors when addressing the Plaintiff's credibility.

The ALJ found that Dr. Flores' determinations are credible because they are supported by objective medical findings and treating progress notes in the record. (Tr. 20). He also considered the residual functional capacity assessment completed by the State Agency and the findings of fact made by the State Agency and other program physicians regarding the nature and severity of the claimant's impairments as expert medical opinions of nonexamining sources. He found the statements to be consistent with the substantial evidence in the case record. (Tr. 20-21). The ALJ gave due regard to the nature and severity of the Plaintiff's impairments and her residual

19

functional capacity.

This Court finds the ALJ properly applied the <u>Holt</u> Pain Standard, and considered all pertinent and relevant evidence necessary to make his finding that the Plaintiff failed to provide sufficient evidence to support her claims of disabling symptoms and limitations. This Court finds substantial evidence supports the ALJ's findings as they apply to the Plaintiff's credibility. As a whole, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

Accordingly it is hereby

**ORDER:**

The decision of the Commissioner is **AFFIRMED**.

**ORDERED** at Fort Myers, Florida, this ___27th___ day of January, 2011.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies:
Counsel of Record, MJCD